690 S.E.2d 131

**In the Interest of KAITLYN P., Arianna C., Christopher C., Ryan C. & Madysen C.**

**No. 35450.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 27, 2010.

Decided Feb. 16, 2010.

W.F. Richmond, Jr., Esq., Assistant Prosecuting Attorney, Beckley, WV, for West Virginia Department of Health and Human Resources.

William M. Lester, Esq., Charleston, WV, Guardian ad Litem.

PER CURIAM:

This case is before this Court upon appeal of a September 24, 2009, order of the Circuit Court of Raleigh County which granted a six-month post-adjudicatory improvement period to the appellees and respondents below, Samantha and Christopher C.[1] In this appeal, the appellant and petitioner below, the West Virginia Department of Health and Human Resources (hereinafter "DHHR"), contends that the circuit court erred by granting the improvement period because neither parent has identified who abused their son, Ryan C., nor even admitted that he was abused, despite uncontroverted medical evidence to the contrary.

This Court has before it the petition for appeal and the entire record.[2] For the reasons set forth below, the order of the circuit court is reversed, and this case is remanded to the circuit court with directions to terminate the post-adjudicatory improvement period and hold a disposition hearing immediately.

## I.

### FACTS

On September 6, 2008, the DHHR was notified that a child, Ryan C., born June 22, 2007, was brought to the emergency room of Raleigh General Hospital in Beckley, West Virginia, with a spiral fracture of his right femur. A Child Protective Services ("CPS") worker responded to the call and spoke with the child's mother, Samantha C., at the hospital. The explanation given by Samantha C. regarding what happened to Ryan C. was inconsistent with the child's injury. The emergency room physician opined that the injury was the result of non-accidental trauma. Ryan C. had to be transferred to Charleston Area Medical Center in Charleston, West Virginia, for treatment by a pediatric orthopedic surgeon.

The next day, the DHHR obtained emergency custody of Ryan C. and his sisters and brother, Kaitlyn P., Arianna C., and Christopher C., Jr., and they were placed in foster care on September 8, 2008. A petition to institute abuse and neglect proceedings was filed by the DHHR in the Circuit Court of Raleigh County on September 10, 2008. The DHHR alleged that Ryan C. had been physically abused and there was imminent danger to the physical well being of all the children. The petition noted that the family had been receiving in-home services from the DHHR since 2005, that prior abuse and neglect proceedings had been instituted in 2007,[3] and that the children were adjudicated as abused and neglected on July 16, 2007. The prior abuse and neglect proceedings had just concluded two weeks before Ryan C. was injured. The circuit court had returned legal and physical custody of the children to the parents on August 26, 2008.

On September 19, 2008, Samantha and Christopher C. waived their right to a preliminary hearing. The court found that probable cause was established and place-

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. Samantha and Christopher C. did not respond to the petition for appeal or file a brief.

3. Abuse and neglect proceedings were instituted in 2007 after Samantha C. threatened to remove Christopher Jr. from the hospital. Christopher had been diagnosed with RSV (respiratory syn-

cytial virus) and had near death vital signs. Christopher's doctor reported that he was underweight, had not been receiving his immunizations timely, and had rashes and redness indicating that he had not been cleaned and changed regularly. That petition also noted that, at different times, red marks and bruises had been observed on other children in the home, there had been at least one incident of domestic violence where both parents had been arrested, and the parents were suspected of using drugs.

ment was proper. An adjudicatory hearing was scheduled for October 22, 2008. Two days before that hearing, Samantha C. gave birth to another child, Madysen C. The DHHR immediately filed an amended petition to include the child in the proceedings.

The adjudicatory hearing began on October 22, 2008, but was continued several times to allow for the testimony of additional witnesses.[4] The adjudicatory hearing was finally concluded in August 2009, and an order was entered on August 26, 2009. In that order, the circuit court found that there was clear and convincing evidence that Ryan C.'s spiral fracture was the result of non-accidental trauma. The circuit court concluded that Ryan C. and the other children in the home were abused. Thereafter, Samantha and Christopher C. made motions for a six-month improvement period. The DHHR objected, but the circuit court granted the motions by order entered on September 24, 2009. This appeal followed.

## II.

### STANDARD OF REVIEW

This Court has explained that "[f]or appeals resulting from abuse and neglect proceedings, such as the case *sub judice,* we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily,* 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). In addition, this Court has held:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, *In the Interest of: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996). With these standards in mind, the issue presented in this case will be considered.

## III.

### DISCUSSION

The DHHR contends that the circuit court erred in granting Samantha and Christopher C. a post-adjudicatory improvement period because they failed to present evidence that they were likely to fully participate in the improvement period as required by W.Va.Code § 49–6–12 (1996) (Repl. Vol. 2009). The statute provides that a six-month post-adjudicatory improvement period may be granted when:

The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period[.]

W.Va.Code § 49–6–12(b)(2). The DHHR argues that Samantha and Christopher C. did not satisfy this requirement because they have not identified who abused Ryan C., nor even admitted that he was abused. In other words, the DHHR reasons that Samantha and Christopher C. could not fully participate in an improvement period when they have not even acknowledged that abuse occurred, despite uncontroverted medical evidence to the contrary.[5] We agree.

---

**4.** It appears that the continuances were in part the result of Samantha C. requesting approval for the employment of a pediatric orthopedic specialist to possibly rebut the opinions of the physicians who testified on behalf of the DHHR

that Ryan C.'s spiral fracture was the result of child abuse.

**5.** The adjudicatory order indicates that Samantha C. did present a written report from Donald

This Court has explained that "an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged." *In re Emily, supra,* 208 W.Va. at 334, 540 S.E.2d at 551. Therefore,

in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*West Virginia Dept. of Health and Human Resources v. Doris S.,* 197 W.Va. 489, 498, 475 S.E.2d 865, 874 (1996).

As discussed, neither parent in this case has acknowledged that Ryan C. was abused. Yet, it is undisputed that Ryan C. was in the care and custody of Samantha and Christopher C. when his leg was broken. According to Samantha C., she and Christopher C. were in the kitchen cooking dinner when she heard Ryan scream. She has stated that she went into the living room and discovered two-year-old Christopher, Jr., on top of Ryan. She claims that Ryan seemed fine and that she then took the kids to pick apples and Ryan was walking around and playing. After they were back home, Ryan starting screaming again. She told her husband that she thought his leg was broken and called her grandmother to come and take them to the hospital.

During the adjudicatory hearing, David Ede, M.D., Ryan's treating orthopedic surgeon, testified in response to questions from the attorney for the DHHR as follows:

Q: And what type of an injury would cause a spiral fracture of a femur of a child of this age?

A: Anybody of any age sustaining a spiral fracture would be from a twisting of the bone.

. . . .

Q: Well, what I'm saying is that there was a description given that this two-year-old fell on this child's leg and thereafter, this child walked out and picked apples for a period of time and came in. If he had had [sic] the spiral fracture from that, would that child have been able to walk?

A: No. That's inconsistent with the pattern of fracture.

. . . .

Q: Okay. Doctor, do you have an opinion as to whether or not—if the description of how this injury occurred was a child—another child fell on top of his leg or he fell from a couch, do you have an opinion as to whether or not those descriptions would be consistent with the type of fracture that this child sustained?

A: In my opinion it is inconsistent.

Q: And do you have an opinion based upon the information that you have been provided as to whether or not this would likely be the result of child abuse?

A: Child abuse occurs when a child is harmed as a result of an action taken on that child. What we have is a patient who has an injury that's consistent with child abuse because spiral fractures in children are automatically—almost automatically considered to be child abuse in and of themselves.

I did not have an opportunity to interview the biological mother or anyone that was there at that time. Based on what I see and the history that seems inconsistent, this is almost a classic example of child abuse.

. . . .

Q: And a two-year-old child would not be strong enough to have caused this type of fracture of this child's leg?

A: No, not by themselves.

Getz, M.D., to rebut the testimony David Ede, M.D., one of the doctors who testified on behalf of the DHHR. However, that report is not included in the record, and Dr. Getz was not present at the adjudicatory hearing to present testimony or be cross-examined. Further, the circuit court found that Dr. Getz failed to adequately rebut Dr. Ede's testimony that Ryan's spiral fracture could not have been caused by the scenarios reported by his mother to Ryan's doctors and CPS workers.

■ Based on all the above, this Court finds that the circuit court erred when it granted Samantha and Christopher C. a post-adjudicatory improvement period under these circumstances. "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syllabus Point 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syllabus Point 1, *In re: Tonjia M.*, 212 W.Va. 443, 573 S.E.2d 354 (2002). In other words, " '[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972)." Syllabus Point 4, *State ex rel. David Allen B. v. Sommerville*, 194 W.Va. 86, 459 S.E.2d 363 (1995). In this case, the granting of a post-adjudicatory improvement period to Samantha and Christopher C. was not in the best interests of Ryan C. and his siblings. Ryan C. was clearly abused and his siblings were certainly at risk of being abused.[6] Absent the parents' acknowledgment of the abuse, the requirement for granting a post-adjudicatory improvement period as set forth in W.Va.Code § 49–6–12(b)(2) was not satisfied.[7]

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the September 24, 2009, order of the Circuit Court of Raleigh County is reversed to the extent that it granted a post-adjudicatory improvement period to Samantha and Christopher C.,[8] and this case is remanded to the circuit court with directions to terminate the post-adjudicatory improvement period and hold a disposition hearing immediately. In conducting the disposition hearing, the circuit court should be mindful of this Court's holding in Syllabus Point 3 of *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), which states,

Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

The mandate of this Court shall issue contemporaneously herewith.

Reversed and remanded with directions.

6. *See* Syllabus Point 2, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995) ("Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va.Code, 49–1–3(a) (1994).").

7. This Court is deeply troubled by the guardian ad litem's limited participation in this appeal. The only document filed by the guardian ad litem in this case was a short letter response asking this Court to refuse the petition for appeal and stating that the improvement period would allow the parents to be reunited with their children. The guardian ad litem had a duty to file a brief and explain his position to this Court. "We again admonish guardians ad litem that it is their responsibility to represent their clients in every stage of the abuse and/or neglect proceedings. This duty includes appearing before this Court to represent the child during oral arguments. In fact, the guardian ad litem's role to represent the child does not cease until permanent placement of the child is achieved. Syl. pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991)." *Christina L.*, 194 W.Va. at 454 n. 7, 460 S.E.2d at 700 n. 7. Given the clear evidence of abuse in this case and the history of these parents, the duties of a guardian are especially strong.

8. The DHHR did not appeal the other rulings of the circuit court in the September 24, 2009, order.