**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In Re: O.B., M.B., L.B. Jr., & D.B.**

**FILED**

February 18, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 13-0921** (Gilmer County 13-JA-2 through 13-JA-5)

**MEMORANDUM DECISION**

Petitioner Mother, by counsel Christina C. Flanigan, appeals the Circuit Court of Gilmer County's August 27, 2013, order terminating her parental rights to O.B., M.B., L.B. Jr., and D.B. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine M. Bond, filed its response in support of the circuit court's order. The guardian ad litem, Shelly DeMarino, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2013, the DHHR received a referral regarding possible abuse to the children at issue. A Child Protective Services ("CPS") worker arrived at petitioner's home unannounced and found the children living in deplorable conditions with their parents, an elderly woman, and fourteen dogs. The home was covered in dog feces. The CPS worker found the children in the bedroom, dirty and wearing soiled diapers. None of the children, then ages one, two, three, and four, were toilet trained. They were also covered with flies, gnats, and other insects, and were walking barefoot in dog feces. The children's mattress was laid next to two dog cages, both covered with several inches of dog feces. The children had scratches on their entire bodies. The back of the youngest child's head was flat due to being left in a car seat for extended periods of time, and he had a blood blister on his penis under the foreskin. All the children were behind on their vaccines.

In March of 2013, the DHHR filed an amended petition based on new information gained after taking emergency custody of the children. The DHHR located and spoke with two individuals providing in-home services to the elderly woman in petitioner's home. They stated that the home was clean until petitioner and her family moved in. These providers stated that the children were always dirty and wore dirty diapers daily to the point that stool seeped out. One provider even stated that she had seen the children playing with feces and smearing it on

1

themselves. The providers were in the home for over five hours each day, and stated that they rarely saw either parent feed the children. When the children were fed, they sat on the floor and had to compete with the dogs for the food on their plates with the parents making no effort to stop the dogs. The amended petition also alleged that both petitioner and the father would slap the children on the face, head, back, and legs, leaving marks. One provider stated that she saw the dogs mauling the children and that when she mentioned it to the parents, they only laughed.

Additional allegations from the amended petition came from evidence obtained from medical professionals who examined the children. The physician that examined the youngest child, O.B., stated that he could not urinate because his foreskin was so unclean that it was basically sealed shut. O.B. was very constipated and was diagnosed as failing to thrive because he was only in the fifth percentile for weight for his age. O.B. was also developmentally delayed, being unable to crawl, sit up, or put weight on his feet. He further had an enlarged chest and flat head, the latter of which was caused by being on a flat surface for extended periods of time. The two older boys, L.B. Jr. and D.B., had circular burn scars on their bodies. L.B. Jr. had so many severe scratches that his actual skin was not visible and the physician indicated that scarring would be permanent due to the injuries' severity and multitude.

In March of 2013, both parents waived their rights to preliminary hearings. The circuit court ordered both parents to undergo psychological evaluations. Over objections from both the DHHR and the guardian ad litem, the circuit court ordered supervised visitation for the children. The circuit court also ordered the DHHR to provide services to the parents. In April of 2013, the circuit court held an adjudicatory hearing. Due to pending criminal charges arising out of the circumstance's set forth in the DHHR's petition, petitioner made only general admissions as to these allegations. Petitioner's admissions included the following: that she permitted the children to live in an unsanitary and unsafe environment; that she failed to protect them from the dogs in the home; and that she neglected their personal hygiene. Based upon these admissions, the circuit court determined that petitioner abused and neglected the children. Both parents moved for improvement periods, and the circuit court took the motions under advisement pending completion of their psychological evaluations.

In August of 2013, the circuit court held a hearing on the motions for post-adjudicatory improvement periods. Corporal Matthew Summers, who accompanied CPS on the day the DHHR removed the children, testified and confirmed the conditions in the home as represented in the petition. The circuit court was also presented with the results of petitioner's psychological evaluation. At the conclusion of the hearing, the circuit court terminated petitioner's parental rights. It is from the subsequent order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Upon our review, the Court finds no error in the circuit court's denial of petitioner's request for an improvement period. West Virginia Code § 49-6-12(b)(2) gives circuit courts discretion in granting post-adjudicatory improvement periods upon a showing that the parent will fully participate in the same. The record in this matter supports the circuit court's denial because of petitioner's failure to show, by clear and convincing evidence, that she would fully comply with the terms of a post-adjudicatory improvement period.

While petitioner argues that she satisfied this burden by admitting to certain allegations at adjudication and by participating in the services she was provided, the Court does not agree. Though petitioner did admit to certain abusive behavior at adjudication, the Court notes that she failed to truly accept responsibility for her actions or acknowledge the conditions that necessitated the children's removal. This is evidenced by petitioner's psychological evaluation, which took place the same day as the adjudicatory hearing. In contradiction to the admissions she made in court, during her psychological evaluation petitioner acknowledged only that the trailer was "a mess" and denied any detriment to her children. The psychologist stated that "[petitioner's] actions appear to be deliberate as she does not suffer from any mental health disorder that would prohibit her from understanding her actions," and stated that petitioner "engaged in severe neglect and maltreatment of her children, with no regard for their well-being." Most importantly, the psychologist noted that "[petitioner] indicated no plans to change her pattern of behavior . . . [and s]he expressed no remorse for her actions nor did she express any empathy for her children." According to the psychologist, petitioner "respresent[ed] a grave and continued risk to her children."

We have previously held that

in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Kaitlyn P.*, 225 W.Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *W.Va. Dep't of Health and Human Res. v. Doris S.*, 197 W.Va. 489, 498, 475 S.E.2d 865, 874 (1996)). Based upon the

evidence above, it is clear that petitioner failed to acknowledge the abuse and neglect she perpetrated on the children. As such, it was not error to deny her motion for a post-adjudicatory improvement period. Further, this same evidence constitutes a circumstance in which there is no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future under West Virginia Code § 49-6-5(b)(2), and circuit courts are directed to terminate parental rights upon this finding and when termination is necessary for the child's welfare pursuant to West Virginia Code § 49-6-5(a)(6). Therefore, it was not error for the circuit court to proceed to termination without first granting petitioner an improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court and its August 27, 2013, order is hereby affirmed.

Affirmed.

**ISSUED**: February 18, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II