# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.K. and W.K.**

**No. 19-0629** (Kanawha County 19-JA-121 and 19-JA-122)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother V.S., by counsel Elizabeth G. Kavitz, appeals the Circuit Court of Kanawha County's June 12, 2019, order terminating her parental rights to E.K. and W.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Matthew Smith, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her services and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner physically abused four-month-old E.K., who had to be hospitalized for his injuries. Specifically, petitioner caused "scratch marks, consistent with abrasions" on the child. According to the petition, a doctor described the child's injuries as nonaccidental, and the child's medical records described the injuries as "child abuse." Petitioner denied abusing E.K. but admitted to failing a polygraph when questioned by police about abusing the child. Further, the DHHR alleged that petitioner admitted to abusing marijuana, methamphetamine, and muscle relaxers. Petitioner also acknowledged that she allowed a man she did not know to live with her and the children for a few

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

weeks because the man was in a relationship with her sister. Petitioner did not know the man's full name and only referred to him by a nickname. As a result, the petition alleged that petitioner's conduct constituted extreme maltreatment and negligent treatment because of E.K.'s unexplained injuries and petitioner's substance abuse. Petitioner then waived her preliminary hearing and the circuit court ordered her to participate in random drug screens, but denied her other services due to the severity of allegations in the petition.

The circuit court held an adjudicatory hearing in March of 2019, where the DHHR presented testimony from a doctor who treated E.K.'s injuries. The doctor testified that she found "unexplained bruising on multiple planes" of E.K.'s body, she and could not offer any reason for the bruising other than child abuse. The doctor also testified that she spoke with petitioner, who offered no explanation for the bruising. The doctor went on, calling the bruising "significant," especially for a four-month old child. Further, the doctor described the marks as "confluent bruising," which was "widespread [and] r[an] together" across E.K.'s backside. Additionally, the doctor defined the bruising as "bilateral and all in th[e] diaper area," meaning the front, back, left and right parts of E.K.'s body. Finally, the doctor noted that although bruising "will heal," it is also a "marker of potential more serious injury to a child" in the future. Following testimony from the doctor, a Child Protective Services worker testified that petitioner's explanations for E.K.'s injuries "continuously changed," and her "only consistent thing" was that she claimed to be the only person changing E.K.'s diaper and that no one else was left alone with the child. The worker also testified that petitioner admitted to abusing methamphetamine the weekend prior to E.K.'s admission to the hospital.

Petitioner testified that she did not cause any of the bruising on E.K. and suggested that she believes the person she allowed to live with her for a few weeks abused E.K. while petitioner was asleep. While denying she abused E.K., petitioner did acknowledge she should not have left the child around someone she did not know well or used drugs while parenting. Petitioner claimed the weekend before E.K. was admitted to the hospital was the first time in her life using methamphetamine, but that using it did not cause her to abuse E.K. or "forget" how the injuries occurred. Additionally, petitioner testified she has an intellectual disability and said she was unsure if that could have impacted her parenting. Specifically, in response to questioning from the circuit court, petitioner acknowledged she received government assistance for being "a little slow," but denied having a physical disability, and no further evidence or explanation was offered regarding petitioner's intellectual disability. In its adjudicatory order, the circuit court found petitioner to be an abusing parent and, due to the severity of the allegations, found that services were not appropriate for petitioner. The circuit court further found that petitioner's adjudication constituted aggravated circumstances, thus the DHHR was not required to make reasonable efforts to reunify petitioner with the children. The circuit court did, however, order petitioner to participate in a psychological evaluation and random drug screens.

In May of 2019, the circuit court held a final dispositional hearing where the DHHR sought termination of petitioner's parental rights. Petitioner moved for a continuance pending the results of the court-ordered psychological evaluation. In ruling on the motions, the circuit court considered several pieces of evidence including that petitioner was unlikely to improve her parenting, questioning how she could "improve from conduct when you don't acknowledge or lack the capacity to acknowledge . . . that there was wrongdoing and errors and that there are severe

injuries." The circuit court denied the continuance and found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given that petitioner "has not made efforts to rectify circumstances" which led to the filing of the petition. Accordingly, the circuit court terminated her parental rights to the children and denied petitioner's motion for post-termination visitation.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her services. Petitioner maintains "she did not cause the injuries to E.K.," that there was a "lack of evidence of causation," and "therefore, aggravated circumstances did not exist and she should have been afforded reunification services." Specifically, petitioner alleges that the bruising found on E.K.'s body was an "isolated physical injury"[3] which "does not create a circumstance that cannot be remedied" through services. According to petitioner, none of the factors set forth in West Virginia Code § 49-4-604(b)(7) were present and, therefore, the DHHR should have been required to make reasonable efforts to preserve her family. We disagree.

West Virginia Code § 49-4-604(b)(7) sets forth that

[f]or purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected

---

[2]The children's father's parental rights were also terminated. The permanency plan for the children is adoption by their current foster family.

[3]While petitioner alleges the bruising to E.K. was an "isolated physical injury," testimony from a doctor who examined E.K. noted that she could not "date bruises," thus providing no evidence as to whether E.K.'s bruising was, as petitioner argues, an "isolated physical injury." As noted above, however, the doctor did describe the bruising as significant and a marker of a potentially more serious injury in the future.

the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, *but are not limited to*, abandonment, torture, chronic abuse and sexual abuse.

(Emphasis added). While petitioner may be correct that none of the listed circumstances were cited by the circuit court in her case, she fails to acknowledge that this list is nonexclusive. Indeed, the text of the statute provides that aggravated circumstances "are not limited to" the listed circumstances. Here, the circuit court found that reasonable efforts were not required in this instance given petitioner's admitted substance use, the significant bruising to E.K. that required the four-month-old child's hospitalization, and the fact that petitioner has continuously denied "an appropriate explanation" for the bruising. The record is clear that, at nearly every step of the proceedings, petitioner failed to demonstrate a protective nature towards the children. She provided a myriad of incredible excuses for E.K.'s extensive bruising, allowed a man she barely knew—and who, by her own admission, may have caused E.K.'s bruising—to stay in her home for several weeks, and admitted to abusing marijuana, methamphetamine, and muscle relaxers while parenting.

The circuit court also considered that petitioner testified under oath that she did not cause the injuries to E.K. and that she did not know how they occurred. This Court has made clear that "in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged." *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010). Further, the "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, petitioner's repeated denials, under oath, that she caused the abuse to E.K. or knew how the bruising occurred demonstrates a failure to take responsibility for the children.

Additionally, petitioner argues that "in light of [her] intellectual disability, the [circuit] court incorrectly denied her access to services . . . which may have enabled" petitioner to obtain reunification. The circuit court, however, considered petitioner's capacity when denying her services, finding at the dispositional hearing that her failure to acknowledge the abuse against E.K. rendered "any course of treatment" futile. Petitioner's assertion that she perhaps required services tailored to her abilities does not change that conclusion. Given petitioner's limited acknowledgement of the issues and the finding of aggravated circumstances, we decline to find the circuit court erred in determining that reasonable efforts were not required in this situation.

Next, petitioner alleges the circuit court erred in terminating her parental rights. According to petitioner, the circuit court erred in finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future given the fact that she had consistently negative drug screens. Coupled with her intellectual disability, petitioner argues that this "ought to have guided the court to explore visitation and reunification services." Specifically, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5). We disagree.

4

The evidence set forth above supports the termination of petitioner's parental rights, given that West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. The circuit court considered several factors when terminating petitioner's parental rights, including that petitioner had "not made efforts to rectify [the] circumstances which led" to the petition's filing.

The record clearly supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect. Notably, petitioner still disputes the circuit court's finding that she was responsible for E.K.'s bruising. She admits only that she should not have left E.K. in the care of a near stranger, an argument that contradicts her testimony below that she was the only person who cared for E.K. As noted above, this Court has made clear that "in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged." *In re Kaitlyn P.*, 225 W. Va. at 126, 690 S.E.2d at 134. Accordingly, we find no error in the circuit court's findings that there was no reasonable likelihood the conditions of abuse and neglect could have been substantially corrected in the near future and that termination was necessary for the children's welfare.

While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 12, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison