**FILED**

**November 13, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In re: J.C., K.C., A.C., I.C., and L.C., No. 23-348**
(Cabell County Case Numbers: 21-JA-123, 21-JA-124, 21-JA-125, 21-JA-192, and 21-JA-193)

## MEMORANDUM DECISION

In this abuse and neglect proceeding, the mother of the children,[1] N.C. ("the Petitioner"), by her counsel, Abraham J. Saad,[2] appeals the Circuit Court of Cabell County's order denying a motion for a post-adjudicatory improvement period and terminating her parental rights.[3]

This Court has considered the parties' briefs, the record on appeal, and the oral argument of the parties. Because there is no substantial question of law and no prejudicial error, a memorandum decision affirming the circuit court is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The initial petition in this matter, filed on August 4, 2021, alleged the Petitioner had exposed the three older children to domestic violence and physically abused them. It was further alleged that the Petitioner's home was in deplorable condition. The initial petition also noted that

---

[1] The terms "the children" or "children" refer to J.C., K.C., A.C., I.C., and L.C., collectively. As more specifically discussed below, because of the birth of I.C. and L.C. during the pendency of this matter below, we will at times refer to the children in distinct groupings. "The three older children" refers to J.C., K.C., and A.C. "The twins" refers to the later-born children, I.C. and L.C. Additionally, as this case contains sensitive facts regarding minor children, we use initials to identify all persons involved. *See* W. Va. R. App. P. 40(e); *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Sarah E. Dixon appears on the brief for N.C. Abraham J. Saad was substituted as N.C.'s counsel during the pendency of this appeal.

[3] The children appear by their guardian ad litem, Allison K. Huson. The Department of Human Services ("DHS") appears by its counsel, Frankie Dame, Assistant Solicitor General. Jason R. Trautwein, Assistant Attorney General, appears on the brief for DHS.

For purposes of abuse and neglect matters, the responsible agency is now the DHS. The agency formerly known as the West Virginia Department of Health and Human Resources ("DHHR") was terminated effective January 1, 2024. *See* W. Va. Code § 5F-1-2. The effect of this law was the division of DHHR into three separate agencies - the Department of Health Facilities, the Department of Health, and the Department of Human Services.

1

the Petitioner was pregnant with twins.[4]  During a hearing on September 7, 2021, the Petitioner stipulated to exposing the three older children to domestic violence and to using marijuana which affected her ability to parent.[5]  Following that stipulation, the Petitioner was granted a post-adjudicatory improvement period.[6]  Thereafter, two amended petitions were filed, both incorporating all of the allegations contained in the original petition.  The additional allegations in the two amended petitions were that the twins had been born, that J.M., the father of A.C. and the twins, was under investigation for possessing child pornography, and that J.M. had sexually abused J.C.  Additionally, the first and second amended petitions contained new allegations as to the twins, namely, that they had been removed from the Petitioner at their birth because of the pending matter regarding the three older children and that their cord blood was being tested to determine if the Petitioner had taken illegal substances while the children were in utero.  Numerous hearings were held during this matter.  During one hearing, the Petitioner attempted to record a portion of the hearing on her phone and then denied that fact when questioned by the circuit court.  As a result of her actions, the Petitioner was held in contempt and sentenced to ten days in jail.

Thereafter, the matter proceeded to adjudication as to the twins and to disposition as to all of the children.[7]  During the October 31, 2022, hearing, the DHS case worker testified that the twins were born with marijuana in their system:

> Q. As it relates to the twins and children who have never fully been in Ms, Campbell's household since their birth, what would be the

---

[4] No determinations regarding the fathers of the children are at issue in this appeal.

[5] The order from this hearing was entered by the circuit court on October 14, 2021.  In that order, the circuit court adjudicated the Petitioner "as an abusive parent due to domestic violence and a neglectful parent due to substance abuse."  In her brief, the Petitioner stated that, "[a]t the adjudicatory hearing on September 7, 2021, [the Petitioner] stipulated that she had abused and neglected the minor children due to domestic violence and substance abuse, i.e. marijuana use only."

[6] There is an entry on the docket sheet that two orders granting an improvement period were entered by the circuit court on September 20, 2021, and September 21, 2021, respectively.  These orders were not included in the appendix record on appeal.  Apparently, this improvement period expired by its own terms, though an order dated February 28, 2022, states that "[t]he guardian ad litem intends to move to terminate the improvement periods of the respondent parents. . . ."

[7] Rule 32 of the Rules of Procedure for Child Abuse and Neglect Proceedings allows for accelerated disposition in certain circumstances.  On appeal, the Petitioner does not assert any assignment of error regarding the timing of the adjudicatory hearing as to the twins and the dispositional hearing as to all the children.  Accordingly, we decline to address this issue. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

basis of the Department's recommendation for termination as it relates to those two children?

A. Her substance abuse all the way up until the last parts of her pregnancy and the children being born with marijuana in their system.

Q. They are admittedly children who are born with substances within their system in this Child Protective Services system; would you agree with that?

A. That is correct.

In its dispositional order, the circuit court found that the Petitioner "waived her preliminary hearing and testified that she understood [the twins] were removed based upon the prior removal of" the three older children. Additionally, the circuit court found that the Petitioner was adjudicated for exposing the three older children to domestic violence, the twins were removed from her home, and that the Petitioner admitted that, following the arrest of J.M. for possession of child pornography, she continued to have contact with J.M. Further, when made aware of allegations that J.M. had sexually abused her daughter, J.C., the Petitioner encouraged J.M. to put her daughter on the stand to testify, going so far as to explain how to cross examine her and what questions J.M.'s attorney should ask J.C. To that end, J.C. was interviewed by A.S., a coordinator with the Child Advocacy Center. During that interview, J.C. disclosed that the Petitioner knew that J.C. had been improperly touching her for some time yet did not take decisive action to stop it. The circuit court found that the Petitioner was aware J.C. was being "molested" by J.M. yet she continued to allow "sleeping arrangements" that "placed [J.C.] at risk of being molested." Based upon the sexual abuse of J.C., the circuit court further found that the Petitioner "create[d] a situation in which the [remaining four children] are also at serious risk for emotional harm and/or physical harm" if left in the Petitioner's care.

After the last hearing in this matter, the Petitioner moved for a post-adjudicatory improvement period. As to that motion, the circuit court found that the Petitioner "failed throughout her initial improvement period [as to the three older children] to acknowledge the existence of the domestic violence" and that "[a]ny further improvement period would be an exercise in futility." Crucially, the circuit court found:

> While [the Petitioner] has complied with services and some aspects of her case plan, she has failed to address one of the main issues, domestic violence, that caused the initial petition to be filed and her overall failure to be forthright with professionals providing said services raises significant questions as to how successful those services have been in addressing the underlying abuse and neglect issues.

3

The Petitioner received services[8] but failed to achieve the stated goals in her case plan. Specifically, the assigned DHS worker testified that the Petitioner stopped contacting him during the course of the proceedings, was given a case goal to address domestic violence, and made no effort to address that goal. Given this evidence, the circuit court concluded that no additional improvement period was warranted. Further, as to the twins, the circuit court found that "[g]iven her failure to address the underlying issues in her improvement period with [the three older children], an improvement period with [the twins] would prove to be an exercise in futility."

Based upon all of these facts, the circuit court adjudicated the Petitioner as abusing and neglectful as to the twins, based upon her stipulation as to substance abuse and the allegations of domestic violence in the original petition not having been addressed at the time of their birth. The circuit court found that the twins "have been neglected by the mother's continued substance abuse in utero during her pregnancy and due to the conditions of abuse and neglect in the original petition not being addressed at the time of their birth."

Accordingly, the circuit court concluded that "there is no reasonable likelihood that the conditions of abuse and neglect that caused the initial petition to be filed, nor the conditions of abuse and neglect that caused the amended petition[s] to be filed can be corrected in the near future." Thus, the circuit terminated the Petitioner's parental rights as to all children. After the conclusion of the adjudicatory hearing, but prior to the entry of the dispositional order, the Petitioner moved for a post-adjudicatory improvement period,[9] and this motion was denied in the dispositional order.[10]

The Petitioner appeals the order denying a motion for a post-adjudicatory improvement period as to the twins and terminating her parental rights as to all children.[11]

## II. STANDARD OF REVIEW

The standard of review in cases such as this is clear:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make

---

[8] The circuit court found these services to be "home parenting services, services from two professionals through the Regional Partnership Grant, individual therapy, and the opportunity to address domestic violence."

[9] This motion is also not in the record.

[10] The dispositional order noted granting such would be an "exercise in futility."

[11] On October 28, 2024, counsel for the Petitioner filed with this Court a Motion to Clarify arguments made during oral argument in this matter. By order entered on November 8, 2024, this motion was denied.

4

findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re H.T.*, 250 W. Va. 11, 902 S.E.2d 143 (2024). With this standard in mind, we turn to the arguments raised in this appeal.

## III. ANALYSIS

On appeal, the Petitioner essentially makes three arguments in support of her contention that the circuit court erred in denying her motion for a post-adjudicatory improvement period and in terminating her parental rights. The Petitioner first argues that the circuit court made erroneous findings in its orders that were contradicted by the evidence adduced at the various hearings in this matter. Next, the Petitioner avers that that the circuit court erred in denying her motion for a post-adjudicatory improvement period as to the twins because she was substantially compliant with the terms of the previously granted post-adjudicatory improvement period that was granted regarding her three older children, which expired by its own terms. Finally, the Petitioner argues that the circuit court erred because termination of parental rights was not the least restrictive means to safeguard the children. After review, we find the circuit court committed no reversible error.

A.      Alleged Erroneous Factual Findings by the Circuit Court

In an abuse and neglect proceeding, "the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W. Va. 325, 339, 540 S.E.2d 542, 556 (2000). "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Thus, this Court must affirm the circuit court if "the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, in part, *In re H.T.*

The issues alleged by the Petitioner simply flow from divergent interpretations of evidence. The Petitioner argues that she corrected "the entirety of the conditions of abuse and neglect that led to the removal of her children." However, the circuit court viewed the evidence differently, and, based upon our review of the entirety of the record before us, we find that the Petitioner's argument is unavailing. There was ample evidence adduced at the multiple hearings held by the circuit court that supported every finding made by the circuit court regarding the Petitioner's failure to correct the conditions of abuse and neglect. The circuit court found, and the record

5

supports, that the Petitioner was untruthful regarding her participation in services that were offered and that she sought to minimize her responsibility for the acts of domestic violence. The record supports the circuit court's finding that the Petitioner coached J.M. on how to question her daughter, J.C., on J.C.'s allegations of sexual abuse at the hand of J.M. Further, the record supports the circuit court's finding that the Petitioner was held in contempt for surreptitiously recording a portion of the proceeding and then lying to the circuit court when she was caught doing so. This lack of candor extended to the Petitioner's statements to her service providers. Petitioner's arguments regarding the alleged erroneous findings ask this Court to reweigh the evidence presented below and find in her favor. Such is not this Court's task. This Court is charged with determining if the circuit court's findings were plausible. We find that they were, in fact, plausible and were supported by substantial evidence in the record. Accordingly, as to the issue of whether the circuit court properly found facts to support its conclusions, we decline to grant relief because of the overwhelming evidence that supports the circuit court's findings.

B.      Denial of Post-Adjudicatory Improvement Period

Following her stipulation to exposing the three older children to domestic violence, the circuit court granted the Petitioner a post-adjudicatory improvement period as to the three older children, pursuant to West Virginia Code § 49-4-610 (2):

> (2) *Post-adjudicatory improvement period.* – After finding that a child is an abused or neglected child pursuant to section six hundred one of this article, a court may grant a respondent an improvement period of a period not to exceed six months when:
> (A) The respondent files a written motion requesting the improvement period;
> (B) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period;
> (C) In the order granting the improvement period, the court:
> (i) orders that a hearing be held to review the matter within thirty days of the granting of the improvement period; or
> (ii) orders that a hearing be held to review the matter within ninety days of the granting of the improvement period and that the department submit a report as to the respondent's progress in the improvement period within sixty days of the order granting the improvement period;
> (D) *Since the initiation of the proceeding, the respondent has not previously been granted any improvement period or the respondent demonstrates that since the initial improvement period, the respondent has experienced a substantial change in circumstances. Further, the respondent shall demonstrate that due to that change in circumstances the respondent is likely to fully participate in a further improvement period*; and

(E) The order granting the improvement period requires the department to prepare and submit to the court an individualized family case plan in accordance with section four hundred eight of this article.

(emphasis added).

Here, the Petitioner, after being adjudicated for domestic violence and drug abuse, was granted a post-adjudicatory improvement period regarding the three older children, which expired by its own terms. The circuit court made specific findings, which we find were supported by substantial evidence contained in the record, to deny the Petitioner's request for an improvement period with regard to the twins:

> While [the Petitioner] has complied with services and some aspects of her case plan, she has failed to address one of the main issues, domestic violence, that caused the initial petition to be filed and her overall failure to be forthright with professionals providing said services raises significant questions as to how successful those services have been in addressing the underlying abuse and neglect issues.
>
> . . . .
>
> [The Petitioner's] attitude and approach to this case and to parenting remains essentially the same. She is willing to say what is necessary to get what she wants whether that be an improvement period or reunification with her children. As she stated, she is willing to lie "when she has to." Given this undeniable fact, the [c]ourt cannot ignore the danger this presents to the children, both physically and emotionally.
>
> . . . .
>
> [The Petitioner] is requesting an improvement period for the two youngest children, but has received services and has been operating under a case plan since October 2021 and has failed to meet those goals.

In order to receive an improvement period, the Petitioner is required to show that she would be "likely to fully participate" in such improvement period. *Id.* § 49-4-610 (2)(B). The circuit court specifically found that the Petitioner had failed to avail herself of services during the post-adjudicatory improvement period relating to the three older children. "[A] parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. at 336, 540 S.E.2d at 553. "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she

has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) quoting *In re Emily*, 208 W.Va. at 334, 540 S.E.2d at 551.

Here, the circuit court plainly found that, based upon the Petitioner's abject failure to make any meaningful improvement during the post-adjudicatory improvement period with regard to the three older children, it would be an "exercise in futility" to grant her an improvement period, based upon the same allegations of domestic violence and substance abuse, with regard to the twins.

C.      Least Restrictive Means

The Petitioner further maintains that the circuit court failed to impose the least restrictive means to protect the children by terminating her parental rights. West Virginia law clearly provided the circuit court the authority to:

> Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

W. Va. Code § 49-4-604(c)(6). We have held that if the circuit court makes the findings required by West Virginia Code § 49-4-604(c)(6), there is no obligation for the circuit court to seek a less restrictive alternative:

> As a general rule the least restrictive alternative regarding parental rights to custody of a child under [West Virginia Code § 49-4-604(a)(2)] will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

> Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected.

8

Syl. Pts. 1 & 2, *In re R. J. M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

In this case, the circuit court terminated the Petitioner's parental rights upon finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Specifically, the circuit court found that the Petitioner had not corrected the conditions stemming from exposure to domestic violence, that she lied to the court regarding those issues, that she failed to admit that there was a problem with domestic violence, despite having received services, and that she had neglected the twins through her continued substance abuse. Thus, the circuit court terminated the Petitioner's parental rights to all five children, finding that the Petitioner's "cumulative testimony to not be credible." Specifically, the circuit court found that the Petitioner:

> [H]as never addressed domestic violence through services.
>
> . . . .
>
> [S]tipulated to domestic violence [in regard to the three older children] in order to obtain an improvement period, but then continued to lie about whether domestic violence existed in the home to professionals in her case, including but not limited to her individual therapist and the parental fitness evaluator.
>
> . . . .
>
> [The twins] have been neglected by the mother's continued substance abuse in utero during her pregnancy and due to the conditions of abuse and neglect in the original petition not being addressed at the time of their birth.

The allegations of substance abuse, alone, are sufficient to support the circuit court's finding that the twins were abused and neglected:

> When a child is born alive, the presence of illegal drugs in the child's system at birth constitutes sufficient evidence that the child is an abused and/or neglected child, as those terms are defined by W. Va. Code § 49-1-201 (2015) (Repl. Vol. 2015), to support the filing of an abuse and neglect petition pursuant to W. Va. Code § 49-4-601 (2015) (Repl. Vol. 2015).

Syl. Pt. 1, *In re A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017). These facts, coupled with the fact that the Petitioner had been previously adjudicated for failing to protect the three older children

from domestic violence, constituted harm to the three older children and both actual and threatened harm to the twins. *See* W. Va. Code § 49-1-201.[12]

Here, DHS proved that the conditions of abuse and neglect could not be substantially corrected in the near future. The failure of the mother to appreciate or correct the conditions of domestic violence demonstrated that she did not successfully complete her post-adjudicatory improvement period for the three older children. Further, the twins tested positive for marijuana at their birth. This means that the three older children were harmed by the Petitioner's actions and the twins were under a threat of harm from those same actions as well as being physically harmed by the Petitioner's continued substance abuse during pregnancy. *See* W. Va. Code § 49-1-201 (defining "abused child" as "[a] child whose health or welfare is being harmed or threatened . . . ." and also defining "neglected child" as "a child [w]hose physical or mental health is harmed or threatened. . . ."). The substantial evidence presented demonstrates that the circuit court's findings supporting termination were not erroneous. Thus, there was no error in the circuit court terminating parental rights.

## IV. CONCLUSION

For the reasons set forth herein, because the Petitioner failed to demonstrate that the circuit court erred, we affirm.

Affirmed.

**ISSUED**: November 13, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[12] We have held that:

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under [West Virginia Code, 49–1–201].

Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

10