# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **C.T. and D.T.**

**No. 20-0086** (Randolph County 18-JA-113 and 18-JA-114)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.T., by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's December 30, 2019, order terminating his parental rights to C.T. and D.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed an abuse and neglect petition based on petitioner's substance abuse. The petition alleged that petitioner and the mother were arrested after law enforcement discovered drugs and drug paraphernalia in the home within reach of the children. According to the petition, law enforcement discovered "scales and little bags containing a crushed white substance," pills lying on the floor, and a pipe on an entertainment center. Additionally, law enforcement found "a needle on the ground loaded with a pink/orange colored liquid" in the yard outside the home. The petition further alleged that petitioner was observed snorting heroin and engaged in a physical altercation with law enforcement. Petitioner thereafter waived his right to a preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In November of 2018, the circuit court held an adjudicatory hearing, during which petitioner stipulated to the allegations against him. Later that month, the circuit court granted petitioner a post-adjudicatory improvement period. The improvement period was reviewed at a series of hearings over the following months and permitted to continue. During this time, petitioner underwent a parental fitness evaluation that resulted in a "fair to guarded prognosis" for improvement in his ability to parent. This was based upon petitioner's diagnosis of anti-social personality disorder, stimulant use disorder, opioid use disorder, and cannabis use disorder. Additionally, the evaluation concluded that petitioner lacked "the parental capacity to care, protect[,] and change in order to provide adequately for his children" and that he would need to undergo intensive outpatient substance abuse treatment because he "does not seem to have the ability to recognize his addictive thinking."

Due to the parents' compliance with the terms and conditions of their improvement periods, the children were returned to their care for a period of trial reunification in May of 2019. However, shortly after the children were returned to their care, they were again removed due to issues related to petitioner's noncompliance with the requirements of his improvement period, including his failure to submit to a drug screen since June of 2019, and the mother testing positive for methamphetamine. As a result, the children were again removed from the parents' care.

Thereafter, the DHHR resumed providing petitioner with remedial services, including adult life skills and parent education and supervised visits. According to the record, petitioner failed to participate in any of these services and did not visit the children after June of 2019. In November of 2019, the circuit court held a hearing on the DHHR's motion to terminate petitioner's improvement period, during which petitioner acknowledged his noncompliance with his post-adjudicatory improvement period but nonetheless asserted that he would fully comply with a post-dispositional improvement period or an extension of his post-adjudicatory improvement period. The circuit court found, however, that the evidence established that petitioner had not submitted to a drug screen since June of 2019 and failed to sign up for the program that would have allowed him to submit to screens in August of 2019. Based on this failure, the circuit court found that "we have no way to even know what his drug test results would be." Additionally, the circuit court found that at a hearing in September of 2019, "the [c]ourt permitted visits to continue under standard terms, thereby giving both [parents] the opportunity to get things back on track and visit with their children." Despite this opportunity, the circuit court found that petitioner "did not even bother to submit to screens in order to . . . visit with his children." Accordingly, the circuit court found that petitioner's improvement period was unsuccessful, terminated the post-adjudicatory improvement period, and denied his motion for a post-dispositional improvement period. The court then scheduled a final dispositional hearing. However, before that hearing was convened, petitioner and the mother were arrested for possession of a "significant amount" of methamphetamine.

In December of 2019, the circuit court held the final dispositional hearing, at which time it reiterated findings that petitioner was noncompliant with the terms and conditions of his improvement period. According to the circuit court, petitioner was in a worse position following the second removal of his children than he was when the case began. Accordingly, the circuit court found that petitioner was unable or unwilling to provide for the children's needs and that

termination of his parental rights was necessary for the children's welfare. Accordingly, the circuit court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. According to petitioner, he testified that he would fully comply with such an improvement period and demonstrated his ability to do so by fully complying with his post-adjudicatory improvement period. We find petitioner's argument unavailing, however, because he failed to satisfy the applicable burden for obtaining a post-dispositional improvement period below. According to West Virginia Code § 49-4-610(3)(D), in order to obtain a post-dispositional improvement period after having been previously granted an improvement period, a parent must "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that, "due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." On appeal, petitioner cites to no evidence that he experienced a substantial change in circumstances and does not allege that such a change occurred. On the contrary, as the circuit court found at disposition, petitioner's circumstances had not changed, "except for the worse." As such, it is clear that petitioner failed to satisfy the applicable burden of proof to obtain an improvement period.

Further, petitioner argues that the circuit court found that he was substantially compliant with the terms and conditions of his post-adjudicatory improvement period, thereby establishing that he would have been substantially compliant with the terms and conditions of a post-dispositional improvement period. This argument, however, ignores the reality that the findings regarding petitioner's compliance occurred early in his post-adjudicatory improvement period before he, essentially, ceased all compliance in the later stages. Indeed, by the time of the dispositional hearing in December of 2019, petitioner had failed to comply with even the minimal

---

[2]The children's respective mother's parental rights were also terminated below. According to respondents, the permanency plan for the children is adoption in the current foster home.

requirement that he visit the children since June of 2019. "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Further, this Court has held that circuit courts have the discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Given that petitioner completely abdicated his responsibility to participate in his post-adjudicatory improvement period, we find no error in the denial of petitioner's motion for a post-dispositional improvement period.

Finally, petitioner argues that the circuit court erred in terminating his parental rights instead of imposing a less-restrictive dispositional alternative. Specifically, petitioner argues that a legal guardianship under West Virginia Code § 49-4-604(b)(5) (2019)[3] would have been more appropriate in this matter. We find, however, that the circuit court's termination of petitioner's parental rights was appropriate, especially considering its findings relating to the inappropriateness of legal guardianship.

According to West Virginia Code § 49-4-604(b)(6) (2019), a circuit court may terminate parental rights upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the child's welfare. Further, West Virginia Code § 49-4-604(c)(3) (2019) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes when

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the evidence established that petitioner's complete abdication of responsibility to follow through with the reasonable family case plan resulted in there being no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future. Further, the circuit court specifically found that termination of petitioner's parental rights was "necess[ary] for the welfare and best interest of the children," given his inability to exhibit the ability to safely parent the children. The circuit court further found that "[a] legal guardianship [would] not provide the children with stability or the best permanency" and was, therefore, not in their best interests, while adoption with their current foster family was "the most appropriate permanency plan to serve the best interests of the children." As such, the circuit court was clearly presented with sufficient evidence upon which to base termination of petitioner's parental rights.

While petitioner argues that termination was inappropriate because less-restrictive dispositional alternatives existed, this Court has previously held that

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison