# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.G.-1 and K.G.-2**

**No. 19-1097** (Randolph County 19-JA-41 and 19-JA-42)

**FILED**

**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father K.G.-3, by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's October 28, 2019, order denying his request for an improvement period and terminating his parental rights to K.G.-1 and K.G.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for an improvement period and terminating his parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the mother alleging a history of substance abuse and domestic violence. Additionally, the petition alleged that petitioner was incarcerated at the time of the petition's filing and left the children with no caregiver. The circuit court held a preliminary hearing and ratified the children's removal from

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children and petitioner share the same initials, we will refer to them as K.G.-1, K.G.-2, and K.G.-3, respectively, throughout this memorandum decision.

1

petitioner's custody.[2] In June of 2019, the DHHR filed an amended petition after conducting forensic interviews with the children. The amended petition alleged that the children disclosed incidents of domestic violence and drug abuse in the home as well as a lack of supervision, including at least one occasion when petitioner and the mother left the children, then ages four and eleven, unsupervised for several days. Further, the amended petition alleged that the children had not asked to see their parents during interviews; that the older child entered foster care very adept at providing for the younger child's needs; and that the older child may have acted as the primary caregiver for the younger child prior to their removal.

In June of 2019, the circuit court held an adjudicatory hearing wherein petitioner stipulated to abusing and neglecting the children due to his substance abuse and domestic violence. Petitioner moved for an improvement period, and the circuit court deferred ruling upon the motion but ordered petitioner to submit to a parental fitness evaluation and drug screens.

In August of 2019, petitioner appeared for his parental fitness evaluation. According to the evaluation, petitioner denied drug abuse, but was found to have a "high probability for drug dependence." Additionally, the report indicated that petitioner took little to no responsibility for neglecting the children, specifically saying "we have never abused her or anything" in regard to K.G.-1. Finally, the evaluation stated that petitioner claimed K.G.-1's decision not to visit him and his wife was due to K.G.-1's anger issues.

The circuit court held a final dispositional hearing in October of 2019 where it considered petitioner's motion for an improvement period and the DHHR's motion to terminate petitioner's parental rights. During the hearing, petitioner testified that he had "always been a great dad" and that he would comply with the terms and conditions of an improvement period. However, petitioner admitted he failed to participate in some random drug screens and repeatedly tested positive for controlled substances when he did submit to screening. A DHHR caseworker testified that petitioner initially participated in the call-in and screening process, but abandoned this responsibility after just one month. Additionally, petitioner's parole officer testified that petitioner failed to consistently check-in or screen with her and was at risk for incarceration. Further, the DHHR caseworker testified that that the children did not appear to have a bond with petitioner, neither child requested contact with him, and K.G.-1 repeatedly stated that she did not want to return to petitioner's care and instead wanted to be adopted by her foster parents. Based upon this evidence, the circuit court denied petitioner's motion for a post-dispositional improvement period. The circuit court considered petitioner's substance abuse, lack of participation in drug screens, lack of bond with the children, and danger of reincarceration due to his continued parole violations. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights. Accordingly, the court terminated petitioner's parental rights by its October 28, 2019, order.[3] It is from this dispositional order that petitioner appeals.

---

[2]Petitioner was incarcerated at the time the original petition was filed and was represented by counsel at the preliminary hearing.

[3]The children's mother's parental rights were also terminated. The permanency plan is for the children to be adopted by their current foster family.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying his motion for an improvement period because he sought to improve his substance abuse problem through treatment, including rehabilitation. Petitioner also argues that he acknowledged he has a substance abuse problem throughout the proceedings and indicated that he would participate in services. In light of this, he argues that the circuit court should have granted him a post-adjudicatory or post-dispositional improvement period. We disagree.

Notably, petitioner does not dispute that he tested positive for methamphetamine and alcohol on multiple drug screens or that he failed to participate in other screens altogether. Indeed, petitioner readily admits these facts are "undisputed." Instead, petitioner argues that "rather than denying use," he made "voluntary admissions" to several test results and sought help "by asking his parole office[r] to assist with drug rehabilitation." While it may be true that petitioner has previously acknowledged struggling with substance abuse, he has at other times flatly denied such abuse, even when confronted with positive drug screens and other evidence. Additionally, while petitioner stipulated to abuse and neglect of the children, he later attempted to minimize his conduct in a subsequent parental fitness evaluation by saying he had "always been a great dad." Despite this evidence, petitioner asserts he "demonstrated his active measures to overcome" substance abuse and that he would have complied with all of the terms and conditions of an improvement period. We do not agree.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Petitioner disputes the circuit court's finding that he was unlikely to fully participate in an improvement period because he alleges that the DHHR failed to offer him help with his substance abuse problem. Yet, the circuit court found that petitioner was unlikely to fully participate in an improvement period, in large part, because he failed to participate in the DHHR's call-to-test program or to participate in his drug screens as ordered, and, further, tested positive when he did participate.[4] The circuit court also found that petitioner was facing a risk of incarceration due to his positive drug screens and his failure to maintain regular contact with his parole officer. Additionally, petitioner attempted to minimize the conditions of abuse and neglect when he testified at the dispositional hearing that he had "always been a great dad."

Petitioner further argues that other than mandatory drug testing, "no other services were implemented or offered." However, the record below is clear that the DHHR offered petitioner multiple services, such as visitation, conditioned on his cooperation. Petitioner correctly notes that his parental fitness evaluation recommended that he receive counseling, drug screens, and visitation, conditional on passing the drug screens.[5] Indeed, petitioner participated in both random call-in screenings and community corrections programs in the first month following adjudication before he ceased. Petitioner contends he stopped participating because he was "understandably frustrated," and that he was promised visitation with the children if he provided negative drug screens. Petitioner, however, either failed to participate in screens or tested positive for controlled substances, such as methamphetamine, on four separate occasions. Petitioner argues that had he "been given the one visit ordered by the [c]ircuit [c]ourt, then his continued participation might have been very different." This is entirely speculative in nature and does not account for his many failed screens or constitute a failure to provide services. Further, petitioner's lack of visitation is a direct consequence of his failure to fully participate in mandatory drug testing and consistently provide negative screens. Thus, while petitioner contends that nothing precluded the circuit court from granting him an improvement period in this case, there is no evidence he would have complied with an improvement period. Accordingly, we find no error in the circuit court's denial of his motion.

---

[4]Petitioner argues his "lapse in participation" in the call-to-test and community corrections check-in programs did not constitute a violation of any written circuit court order and should not have been used as a basis to deny an improvement period or terminate his parental rights. However, petitioner acknowledged in testimony at the dispositional hearing that the circuit court orally ordered him to participate in the programs at the adjudicatory hearing. Therefore, petitioner was aware the circuit court ordered his participation in these programs.

[5]In addition to his parental fitness evaluation, petitioner contends that the circuit court granted him a bonding assessment with the children that never occurred. While petitioner is correct that the circuit court ordered a bonding assessment in its adjudicatory order, petitioner failed to fully participate in his drug screens and, therefore, was never granted visitation with the children. Further, the circuit court considered petitioner's bonds with the children through the children's interviews with the DHHR. In the interviews, K.G.-1 was unequivocal in not wanting to see petitioner, while K.G.-2 expressed indifference. Accordingly, any bonding assessment was rendered moot by petitioner's noncompliance and the circuit court's consideration of the children's wishes as expressed in their interviews.

Next, petitioner alleges the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5) (2019).[6] However, the same evidence set forth above supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the best interests of the children. With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given his untreated substance abuse issues. While it is true that petitioner may be able to undergo some treatment in the future for his substance abuse, such possible improvement was based on pure speculation. Indeed, petitioner denied a substance abuse problem on several occasions. Further, petitioner often failed to avail himself of the DHHR's services, missing several drug screens and testing positive on others. While petitioner also takes issue with the timeframe from adjudication to termination, arguing that he should have been given additional time and an opportunity to demonstrate that he could correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted).

While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). For the foregoing reasons, we find no error in the decision of the circuit court, and its October 28, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[6]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.