**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.B. and S.R.**

**No. 20-0770** (Kanawha County 20-JA-163 and 20-JA-164)

## MEMORANDUM DECISION

Petitioner Mother A.R., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's August 26, 2020, order terminating her parental rights to A.B. and S.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner failed to provide stable housing, necessary food, shelter, medical care, and hygienic needs for the children. Specifically, the DHHR alleged that it received a referral after the police found the children, ages five and eight, filthy, shoeless, and flagging down traffic to beg drivers for food. The children explained that they had not seen petitioner in two days and were living in a tent. They appeared malnourished and one child had a bloody blister on her foot. After the police officer fed the children, petitioner and her boyfriend appeared on scene. The police officer suspected that petitioner was intoxicated, and her subsequent breathalyzer test showed a blood alcohol content of .078. Further, petitioner was inexplicably clean and dressed in expensive, name brand apparel and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

jewelry. The children were taken to the hospital and their blood sugar was found to be low due to lack of food. Petitioner explained to medical staff that she had no stable home, having recently moved between several locations, and that she had no family. It was further determined that the children had not been regularly attending school and were educationally behind for their ages. Finally, the DHHR alleged that petitioner was "not sufficiently motivated and organized to provide for the needs of the infant children on an ongoing basis" and that the children had been abandoned when the mother left them alone and unsupervised in a tent for several days. At the preliminary hearing held the same month, the circuit court found probable cause that the children were in imminent danger and ordered the DHHR to provide petitioner with services such as supervised visitations, adult life skills and parentings classes, and substance abuse treatment.

The circuit court held a contested adjudicatory hearing in June of 2020. The DHHR presented evidence consistent with the allegations of the petition. Petitioner testified that she provided for the children's needs and planned on finding shelter at the time of the children's removal. She further testified that the children lied when they told the police that they had been alone for two days. When asked about her current living situation, she stated that she lived with her boyfriend at his friend's home, rent-free, and that despite knowing the friend for only a few weeks, she considered the friend a mother-type figure. Upon hearing the evidence presented, the circuit court adjudicated petitioner as an abusing parent.

A multidisciplinary team ("MDT") meeting was held in early July of 2020, during which the team discussed petitioner's move to Kentucky to live with her boyfriend and her refusal to return to West Virginia. The MDT members determined that petitioner had not participated in any services except for occasional telephone calls with the children, during which she often failed to engage in conversation and handed the phone to her boyfriend. Petitioner further stated that she did not have employment but was seeking a job. In late July of 2020, petitioner filed a motion for a post-adjudicatory improvement period, asserting that she claimed responsibility for the conditions of abuse and neglect, was willing to participate in an improvement period, obtained employment, was seeking housing, and could complete services in Kentucky.

Prior to the dispositional hearing, the guardian filed a report stating that the children's educational neglect was severe and that they were very behind for their ages due to the lack of stable schooling. The guardian explained that the children's behavior indicated long-term neglect as they did not know how to sit at a table to eat with utensils and delighted in regular items like blankets, baths, pajamas, meals, and their own beds. A court appointed special advocate ("CASA") report submitted prior to the dispositional hearing explained that the children had been enrolled in school only three months of the prior school year and had been enrolled in schools in Florida, Kentucky, and Ohio in the past year.

In late July of 2020, the circuit court held a dispositional hearing, wherein petitioner failed to appear, but counsel represented her. Petitioner's counsel proffered on the record that he had spoken with petitioner the day before and that she knew to attend the hearing by phone. The DHHR and the guardian moved to terminate petitioner's parental rights. The DHHR presented evidence that petitioner left West Virginia with no plans to return to participate in the proceedings. Petitioner's excuse was that she lacked housing in West Virginia, but the DHHR worker stated

that she offered housing assistance to petitioner. The DHHR explained that it did not have access to service providers in Kentucky and that petitioner did not respond when asked to locate alternative service providers in Kentucky. According to the DHHR worker, petitioner was advised to move back to West Virginia to participate in services to regain custody of her children. The circuit court noted that petitioner's supervised phone calls were not productive in that they were short, she failed to connect with the children, often gave the phone to her boyfriend, and often missed calls. The circuit court found that petitioner "rebuffed all other services," moved to Kentucky without notice, and refused to return. In light of the evidence, the circuit court found there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare.[2] The circuit court entered an order reflecting its decision on August 26, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period. According to petitioner, the "problems that arose in the petition were related to economic factors and [petitioner] should have been given time to improve her circumstances." Petitioner asserts that she and the children were homeless and travelled from state to state seeking employment and housing. Petitioner attempted to obtain employment in West Virginia but was unable to do so. She had a support system in Kentucky whereas she had no friends or family in West Virginia to help her obtain employment and housing. Petitioner contends that the DHHR should have offered her assistance, regardless of her leaving West Virginia. We find petitioner's arguments unavailing.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing

---

[2]The respective fathers' parental rights were terminated below. The permanency plan for the children is adoption by their current foster family.

evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner contends that the DHHR should have provided her with services in Kentucky, the DHHR explained to her that it could only provide services in West Virginia. In her brief, petitioner concedes that she was asked to return to West Virginia to participate in services, and she refused to do so. She further concedes that she failed to respond to the DHHR when asked to locate services on her own in Kentucky. Petitioner's excuse for abandoning the proceedings and refusing to participate in services offered by the DHHR in West Virginia was her lack of a support system. Petitioner claims that she found such a support system in Kentucky with her boyfriend's friends. However, petitioner ignores the fact that the DHHR offered her support in West Virginia. At the dispositional hearing, the DHHR worker testified that she offered to help petitioner with housing assistance and petitioner refused. Further, at the preliminary hearing, the DHHR was ordered to provide petitioner with supervised visitations, adult life skills and parentings classes, and substance abuse treatment. Petitioner chose not to stay and participate in proceedings designed to reunify the family. Petitioner failed to avail herself of services offered by the DHHR to help her correct the conditions of abuse and neglect, and she failed to cooperate with the DHHR to locate and obtain services in Kentucky. Moreover, petitioner never demonstrated a genuine interest in having contact with the children as shown by her missed visitation phone calls and inability to engage with the children during the few calls in which she participated. *See In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) ("[T]he level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently . . . ."). In light of the overwhelming evidence that petitioner was unlikely to participate in the terms and conditions of an improvement period, we find no error.

The above evidence likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect either on her own or with help. As noted above, petitioner was offered numerous services, including housing assistance, aimed at correcting her parenting deficits, chronic homelessness, and substance abuse problem. While petitioner contends that she could not

find employment in West Virginia, her testimony at the adjudicatory hearing was that she remained unemployed in Kentucky.[3] Petitioner failed to participate in parenting and adult life skills classes offered in West Virginia and failed to seek alternative services in Kentucky. Most importantly, she wholly failed to address her substance abuse problem. By continuing to constantly move from one location to another with no plans for the children's care and education and choosing her relationship with her boyfriend over the welfare of her children, petitioner has demonstrated that the conditions of abuse and neglect remain unabated.

Though petitioner claims that she should have been given more time in an improvement period to seek services, employment, and housing in Kentucky, we have held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Based on this evidence, we cannot find that the circuit court erred in concluding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future, as petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. We likewise find that termination of petitioner's parental rights was necessary for the children's welfare as their educational and general neglect would likely continue if placed back in the mother's care due to her failure to address her substance abuse problem and inability to provide a stable and safe home environment for the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 26, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[3]Petitioner's motion for a post-adjudicatory improvement period asserted that petitioner obtained employment, but there is no evidence in the record of said employment.