**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.P.-1 and Z.P.**

**No. 20-0947** (Jackson County 19-JA-112 and 19-JA-113)

**MEMORANDUM DECISION**

Petitioner Father J.P.-2, by counsel Lauren A. Estep, appeals the Circuit Court of Jackson County's October 22, 2020, order terminating his custodial rights to J.P.-1 and Z.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, Ryan M. Ruth, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him an improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed a child abuse and neglect petition against petitioner, alleging domestic violence and physical abuse against J.K., H.K., J.P.-1, and Z.P.[3] Specifically, the DHHR alleged that petitioner struck two of the children in the face and leg while at a local

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.P.-1 and J.P.-2, respectively, throughout this memorandum decision.

[2]Petitioner does not assign as error the termination of his custodial rights.

[3]Petitioner and his girlfriend are the biological parents of J.P.-1 and Z.P. Petitioner's girlfriend is the biological mother of J.K. and H.K.; petitioner is not the biological father of those two children, and they are not at issue on appeal.

McDonald's restaurant. Customers observed the altercation and intervened, calling the police. Subsequently, all four children underwent a forensic interview. During their interviews, all of the children disclosed that petitioner frequently struck them with a wooden board and struck them in the face with his hand. The children corroborated that petitioner struck J.P.-1 and Z.P., then ages nine and seven years old, respectively, while at a McDonald's restaurant and that other customers intervened and called the police. Then fifteen-year-old J.K. reported that petitioner had hit her in the face and grabbed her by the hair. On one occasion, petitioner "held her down and punched her in the back ten times and it left bruises." Then-twelve-year-old H.K. corroborated J.K.'s disclosures and stated that their school had learned of the incident and called petitioner, who denied hitting J.K. H.K. stated that after receiving that phone call from school personnel, petitioner slapped J.K. in the face. H.K. further reported that petitioner had previously struck him in the knees with a skillet and punched the top of his head. All children reported that they were afraid of petitioner and did not feel safe with him. The children also disclosed domestic violence between petitioner and the mother. A Child Protective Services ("CPS") worker spoke to the mother, who reported that petitioner frequently physically abused the children.

Petitioner underwent a psychological examination in January of 2020. During the examination, petitioner denied striking the children at McDonald's. Petitioner claimed that he placed his hand on the children's mouths and demonstrated a "tapping" motion. Petitioner then stated that he did not touch the children but that the angle of the surveillance video made it look like he touched them. Petitioner also generally denied striking the children with his hands or with a wooden board. Petitioner denied hitting J.K. on the back and claimed that the bruising occurred from riding a bike, roughhousing with other children, and playing on a trampoline. Petitioner also claimed that the mother and the children had "mental conditions" and made statements against him because "[t]hey're crazy." When asked whether he anticipated changing or doing anything differently as a result of the proceedings, petitioner stated "I don't think I would do anything different."

The evaluator opined that there was no indication that petitioner accepted responsibility as he adamantly denied all the allegations and denied abusing or neglecting the children. The evaluator noted that without insight and acceptance of responsibility, there was no reason to believe that petitioner was sincerely motivated to change. The evaluator concluded: "Given his utter refusal to accept responsibility, his lack of insight and motivation to change, and his highly dysfunctional personality traits that prompt him to justify the physical abuse and to blame others, [petitioner's] prognosis for improved parenting . . . is extremely poor." Resultantly, the evaluator indicated that there were no services that could improve petitioner's parenting skills within a reasonable time, if at all.

The circuit court held an adjudicatory hearing in August of 2020. The DHHR presented the previously recorded in-camera testimony of the children, which remained consistent with their statements in the forensic interviews as they reported that petitioner frequently struck them with his fist or a wooden board. J.K. and H.K. reiterated that petitioner struck J.K. in the back with a closed fist multiple times and that her back turned black from bruising. J.P.-1 and Z.P. testified that petitioner struck them in the face and leg at McDonald's, that their skin turned red as a result, and that it hurt. The children remained afraid of petitioner and did not wish to see him. Petitioner testified and denied striking the children and denied their disclosures. Petitioner also denied hitting

2

the children while at McDonald's despite video surveillance footage to the contrary. Petitioner stated that he put his hand over Z.P.'s mouth, "just, you know, playing with him." After hearing testimony, the circuit court adjudicated petitioner as an abusing parent and custodian, finding that the children's consistent testimony of the abuse was credible and that petitioner's testimony was not credible.

In September of 2020, the circuit court held a dispositional hearing. Petitioner filed a motion for a post-adjudicatory improvement period. The DHHR presented the testimony of a service provider, who stated that she provided petitioner with parenting classes. The provider testified that petitioner was very compliant in terms of meeting with her. However, petitioner maintained throughout the proceedings that he had done nothing wrong and had not abused the children. Further, when going over the class materials, petitioner claimed "[t]hat's what I've always done" or "[t]hat's always how I've parented." The service provider testified that petitioner claimed he never inappropriately disciplined the children and would not admit to "simple parenting fail[ure]s." Petitioner would "not even admit to the littlest of things." Petitioner also admitted to the provider that he did not feel capable of properly caring for the children day to day due to his health. The provider opined that, due to petitioner's refusal to accept responsibility for his actions, there had been no improvement. The provider further testified that an improvement period would not be beneficial based upon petitioner's refusal to accept responsibility.

Petitioner testified that he had been participating in services including parenting and anger management classes. Petitioner testified that he "definitely could find places to improve in" but stated "I did everything. And that's why I thought, 'What else can I do?'" When questioned what areas of parenting he could improve upon, petitioner simply reiterated that there was always room for improvement but could not give any specific examples of what he needed to improve or what he had learned from services. Petitioner stated that he would participate in any services offered by the DHHR.

By order entered on October 22, 2020, the circuit court found that although petitioner testified that he learned from the services provided, he was unable to provide any real examples. Most concerning to the circuit court was petitioner's continued denial of the issues leading to the petition's filing and his adjudication. Regarding petitioner's request for an improvement period, the circuit court found that petitioner "demonstrated his willingness to participate in classes provided by the [DHHR], but little else." The circuit court further found that the "critical factor in this case is not [petitioner's] attendance, but rather his willingness to admit the abuse for which he was adjudicated." The circuit court found that petitioner continually refused to acknowledge any of the issues that led to children's removal and that the "limited admissions" petitioner made at the dispositional hearing about generally needing to improve his parenting "are insufficient and were wholly unconvincing." The circuit court concluded that petitioner failed to respond to rehabilitative efforts and that the likelihood petitioner would correct his parenting deficiencies in the foreseeable future was nonexistent. Accordingly, the circuit court denied petitioner's request for an improvement period and terminated his custodial rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near

future and that termination of his custodial rights was necessary for the children's welfare. Petitioner appeals the October 22, 2020, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him an improvement period. According to petitioner, he filed a written motion requesting an improvement period and presented evidence demonstrating that he was "willing and wanting to fully participate in an improvement period." For example, petitioner's service provider testified that he was compliant with services and regularly met with her whether by phone or in person. Petitioner contends that it was unrefuted that he had been participating in parenting and adult life skills classes, as well as individual therapy to address anger management issues. Petitioner also testified that he was willing to participate in any services offered to him and acknowledged that he "could definitely find areas he needed to improve in." Petitioner testified that he loved the children and desired to continue a relationship with them.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

---

[4]The petition against the mother was dismissed following her successful completion of a preadjudicatory improvement period. The children were reunited with the mother, and the permanency plan for the children is to remain in her care.

Petitioner failed to demonstrate that he was likely to fully participate in an improvement period. Petitioner is correct that he was compliant with services in that he attended all sessions provided to him. However, beyond showing up to scheduled services, petitioner refused to acknowledge the conditions of abuse. Throughout the proceedings, petitioner denied ever striking the children despite their consistent testimony that he regularly hit them, as well as the video surveillance footage showing petitioner striking two of the children. Petitioner claimed that he simply patted them or held his hand over their mouths and was "playing" with them. This claim is questionable given that customers found petitioner's behavior so concerning that they called law enforcement. Further, petitioner attributed the disclosures of the mother and J.K. to mental conditions, calling them "crazy." The service provider testified that, during sessions, petitioner claimed that he already parented exactly as demonstrated in the materials and refused to admit to even minor parenting faults. Both the service provider and the evaluating psychologist opined that there were no further services that could be provided to petitioner given his refusal to accept responsibility for his actions. In fact, when the psychological evaluator asked petitioner whether he anticipated changing as a result of the proceedings, petitioner informed the evaluator that he would not do anything differently. In his own testimony, petitioner vaguely testified that he could "definitely" find some aspect of his parenting to improve upon but was unable to provide any examples of parenting deficiencies.

This Court has recognized that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's complete failure to accept responsibility for his actions during the proceedings below, we find no error in the circuit court's denial of petitioner's request for an improvement period as it would have been an exercise in futility at the children's expense.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton