**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **J.H.**

**No. 21-0279** (Kanawha County 20-JA-174)

**MEMORANDUM DECISION**

Petitioner Mother D.Z., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's March 1, 2021, order terminating her parental rights to J.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, J. Rudy Martin, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period and without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner's substance abuse negatively impacted her ability to parent then ten-year-old J.H. The DHHR alleged that petitioner had a prior Child Protective Services ("CPS") case in 2013, wherein J.H. was placed in foster care, but did not describe the conditions of abuse and neglect of that case. In 2015, petitioner was arrested and incarcerated, and J.H.'s maternal great-grandmother, K.D., obtained guardianship of J.H. However, once petitioner was released in 2017, K.D. returned J.H. to petitioner's care. The DHHR alleged that petitioner and J.H. had been homeless for at least the previous two years and "couch surfed" at various homes. As a result, J.H. was often truant in school. Additionally, the DHHR alleged that petitioner left the child in the care of strangers, some of which were known sex offenders. During the initial contact on April 3, 2020, the DHHR worker

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

observed petitioner to be under the influence of drugs, as she acted erratic and aggressive. Petitioner showed the worker a prescription bottle for forty Lortab pills that was filled on March 31, 2020. However, only eleven pills remained indicating that petitioner had taken twenty-nine pills in approximately three days. Petitioner also could not remember why she had previously been incarcerated and refused to tell the worker where the child was presently located. Instead, another individual in the house disclosed J.H.'s location. When the worker and petitioner went to the child's location, petitioner immediately told J.H. not to say anything bad about petitioner to the worker. During the maternal great-grandmother's interview, the worker learned that she was unable to care for J.H. and had been unsuccessful in finding another family member to take care of the child.

At the preliminary hearing held the same month, the CPS worker testified consistent with the allegations in the petition, but added some additional details. The worker stated that during her initial contact with J.H., petitioner attempted to get J.H. to lie about petitioner's drug use and tell the worker that petitioner was a "good mother." Petitioner testified that she had a valid prescription for pain medication after having knee surgery, she lived with friends, and did not believe any of her associates were sex-offenders. Having heard the evidence, the circuit court ratified the removal of the child and also ordered the DHHR to provide petitioner parenting and adult life skills services as well as supervised visitations contingent upon petitioner's clean drug screen results.

The circuit court held an adjudicatory hearing in June of 2020. The DHHR presented evidence consistent with the petition and testimony given at the preliminary hearing. The circuit court found that petitioner had no stable home, exposed the child to a convicted sex-offender, appeared intoxicated during the child's removal, attempted to thwart the CPS worker's investigation, and had apparently abused a prescription for pain medication. The court adjudicated petitioner as an abusing parent. In July of 2020, petitioner filed a motion for a post-adjudicatory improvement period.

In September of 2020, the circuit court ordered petitioner to undergo a parental fitness and psychological evaluation. The following month, the DHHR submitted a summary stating that providers were concerned with the manner in which petitioner spoke with the child during visits and that the child had cried and begged not to attend the visits. At a status hearing in October of 2020, the circuit court suspended petitioner's supervised visitations and held her motion for an improvement period in abeyance. By December of 2020, the court ordered that petitioner could exercise supervised visitations if the child wished to participate.

Petitioner completed her parental fitness and psychological evaluation in January of 2021. During the evaluation, petitioner denied all allegations of abuse, including that she left J.H. in the care of strangers or with sex offenders. She denied J.H.'s educational neglect. Petitioner blamed CPS for taking away J.H. and stated that CPS took children away from "innocent parents who take care of their kids." Petitioner explained that she acted intoxicated when the worker first met her because she had just taken a lithium pill, which made her tired. Although the lithium was prescribed to treat her bipolar disorder, petitioner admitted that she took the medication "off and on" and that she did not need the medication. Petitioner admitted attempting to thwart the investigating CPS worker's investigation by refusing to disclose J.H.'s location or to tell the CPS worker why she was incarcerated for three years. Petitioner stated, "I knew where [J.H.] was, but

I didn't wanna (sic) to tell [the worker]. What I was trying to do was get away and run." Regarding her failure to provide safe, stable housing, petitioner replied "Wrong, because that's in the process right now. I had my application in at that time, like I said, they [the housing office] lost my paper." Petitioner described periodic episodes of blacking out for several hours at a time and that J.H. was aware of the situation and knew what to do when it happened. When asked to rate herself as a parent, petitioner answered, "Great. Awesome." Petitioner stated that she had knee surgery in December of 2020, and that she was prescribed pain medication and muscle relaxers. Petitioner admitted to abusing prescribed pain medication in the past and being an "alcoholic" about "ten years ago," but denied a current addiction. Despite describing a long history of psychiatric illness, petitioner stated that she did not need medication, therapy, or counseling services. The psychologist concluded that there were no services or interventions that could improve petitioner's parenting within a reasonable amount of time due to petitioner's complete lack of insight into how she neglected the child and due to petitioner's "cognitive and adaptive deficits."

In February of 2021, the DHHR submitted a court summary stating that petitioner's visits were suspended after she allegedly threatened J.H.'s foster placement. The DHHR recommended termination of petitioner's parental rights. That same month, the circuit court held a final dispositional hearing. The DHHR presented the testimony of the psychologist who performed petitioner's parental fitness and psychological evaluation in January of 2021. The psychologist testified petitioner had a mild intellectual deficit, would benefit from further psychiatric evaluation and treatment, and would benefit from living in a structured environment, such as a group home. The psychologist noted that petitioner had not taken any responsibility for J.H.'s abuse and neglect and concluded that petitioner was unable to correct the conditions of abuse and neglect in a reasonable amount of time. In her opinion, the psychologist found that petitioner's prognosis for improving her parenting abilities within a reasonable degree of professional certainty was "extremely poor."

Next, a CPS worker testified that petitioner had complied with drug screening and parenting and adult life skills sessions but had failed to receive any benefit from those services. The worker stated that despite many months of the DHHR's efforts, petitioner had still not obtained independent and stable housing, had not secured stable employment, and had supervised visitations suspended twice. On cross-examination, the worker stated that J.H. did not wish to have contact with petitioner. A service provider testified that petitioner should be approved for housing assistance within the week and that she witnessed no issues during petitioner's supervised visits. However, the service provider stated that petitioner was not in a position to parent J.H. Petitioner renewed her motion for a post-adjudicatory improvement period and testified that she would comply with additional services and that she wished to have visits with J.H. Petitioner denied making threats towards J.H.'s placement. The circuit court denied the motion, finding that petitioner was "not ready or willing to do what is necessary to provide for [J.H.]" and noted petitioner's history of failing to comply with psychiatric treatment and failure to accept responsibility for J.H.'s neglect. Based on the evidence presented, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was in the child's best interest. The circuit court terminated

petitioner's parental rights by its order entered on March 1, 2021. Petitioner appeals the dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. In support, petitioner argues that she testified at the dispositional hearing that she would comply with additional services. Petitioner participated in adult life skills and parenting sessions and tested positive only for prescribed medications on her drug screens. Petitioner asserts that the evidence at the dispositional hearing showed that she would have housing within the week, she could be more stable with proper medication, and that there were no issues at the supervised visitations. Petitioner argues that she was never given the opportunity to start a medication management program or show the circuit court that she could properly parent her child.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Also, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator

---

[2]The father is deceased. According to the respondents, the permanency plan for the child is adoption by her foster parent.

4

of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was unlikely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to J.H.'s neglect. While petitioner argues that she proved she was likely to participate in an improvement period by participating in drug screens, applying for housing, and participating in adult life skills and parentings classes, these actions alone could not have successfully remedied the conditions of abuse and neglect without petitioner's recognition of her abuse and neglect. Petitioner's parental fitness and psychological evaluation showed that she denied all wrongdoing and shortcomings, blamed CPS for taking away J.H., and claimed to be a great and excellent parent despite evidence that she failed to provide J.H. with basic necessities and exposed J.H. to a dangerous and unstable living environment. Petitioner denied current drug abuse yet admitted to past drug and alcohol addictions. Petitioner admitted to having multiple prescriptions for pain killers and muscle relaxers for alleged knee surgeries and claimed that taking large doses in a short amount of time was not abusive behavior. Disturbingly, petitioner described having regular blackouts, but was not concerned about how this impacted her ability to parent and supervise J.H. As such, there is ample evidence that petitioner failed to acknowledge her responsibility for J.H.'s neglect, and we find no error in the circuit court's decision to deny her an improvement period as it would have been "an exercise in futility" at J.H.'s expense. *Id*.

Next, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5). According to petitioner, as J.H. was placed with petitioner's cousin and was nearly eleven years old, there was no need to terminate petitioner's parental rights. Petitioner avers that this disposition would have allowed her time to correct her issues and modify custody at a later date.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence overwhelmingly shows that petitioner failed to respond to a reasonable family case plan. Although petitioner complied with some services, the DHHR

worker testified that petitioner failed to benefit from the receipt of these services. Most importantly, the psychologist testified that petitioner was unable to correct the conditions of abuse and neglect in a reasonable amount of time as petitioner's prognosis for improving her parenting abilities within a reasonable degree of professional certainty was "extremely poor." Furthermore, the evidence supports the termination of petitioner's parental rights as necessary for the child's welfare as petitioner's visits were suspended twice—once at the child's wishes and the other due to petitioner's threats against the foster parent. At the dispositional hearing, the worker testified that J.H. no longer wanted to have contact with petitioner. As such, it is clear that that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and the child's welfare required termination of petitioner's parental rights.

Finally, regarding petitioner's argument that her parental rights should have remained intact since the child was placed with her cousin, we find that petitioner essentially argues to delay the child's permanency to allow her an opportunity to demonstrate that she could correct the conditions of abuse. However, this Court has routinely held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 1, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6